UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MISTY THOMPSON                                                                    PLAINTIFF

v.                                                            CIVIL ACTION 3:11-CV-493-H

COMMISSIONER OF SOCIAL SECURITY                                     DEFENDANT

**FINDINGS OF FACT**
**CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

**FINDINGS OF FACT**

Plaintiff, Misty Thompson, has filed a complaint pursuant to 42 U.S.C. §405(g) to

obtain review of a decision of the Commissioner of Social Security that denied her application

for supplemental security income (SSI).  Thompson applied for SSI benefits on May 12, 2008

(DN 118-24), alleging that she became disabled on that date due to bipolar disorder and panic

attacks.  The Commissioner denied her application on initial consideration (DN 101-102) and on

reconsideration (Tr. 110-112).  Thompson requested review by an administrative law judge

(ALJ) (DN 113-114).

ALJ Daniel Traver conducted a hearing in Louisville, Kentucky, on March 19,

2010 (Tr. 29-67).  Thompson attended with her attorney, Anthony Hoyle (Tr. 29).  She and

vocational expert William Harpool testified (Tr. 32-59, 60-66).  On June 21, 2010, ALJ Traver

entered a hearing decision (Tr. 18-25).  In his decision, the ALJ made the following findings of

fact:

1.      The claimant has not engaged in substantial gainful activity since May 12, 2008,
         the application date (20 C.F.R. §416.971).

2.      The claimant has the following severe impairments:  bipolar disorder and panic
         attacks (20 C.F.R. §416.920(c)).

3.      The claimant does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, two-step, low stress tasks at any exertional level involving [a] limited number of co-workers and supervision, no work at unprotected heights or around hazardous machinery, and no interaction with the general public.

5.      The claimant is capable of performing [her] past relevant work as a mail clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 416.965).

6.      The claimant has not been under a disability, as defined in the Social Security Act since May 12, 2008, the date the application was filed. (20 C.F.R. 416.920(f)).

(Tr. 20-24).  Thompson requested review of the hearing decision by the Appeals Council (Tr. 13-14).  The Appeals Council determined that no basis exists under the regulations to grant her request (Tr. 1-3).  Thompson then filed the present lawsuit in which she raises four arguments for reversal of the Commissioner's decision.

Thompson now argues in her fact and law summary that she is disabled at step 3 of the sequential evaluation process.  Thompson claims in this regard that her mental condition satisfies the criteria of listing 12.04 for affective disorders found in Appendix 1 of Subpart P of Part 404.  She argues in her second, and related, argument that ALJ Traver failed to abide by the treating physician rule.  Specifically, she claims that the ALJ declined to address the treatment notes and medical opinion of her treating psychiatrist, Dr. Chhibber, who found her to be markedly limited in her (1) understanding and memory, (2) sustained concentration and persistence, (3) social interactions, and (4) adaptation so as to preclude even sedentary work (DN 251 285-292).

Third, Thompson argues that the ALJ erred at step 4 of the sequential evaluation process when he failed to properly evaluate her credibility in determining her residual functional capacity (RFC).  Finally, Thompson claims that the ALJ failed to present a hypothetical question to vocation expert Harpool that reflects all of the nonexertional-related impairments caused by her bipolar and panic attack disorders.  The Commissioner has filed a fact and law summary that maintains any possible errors in the ALJ's hearing decision are harmless because substantial evidence establishes that Thompson was not disabled at age 28 due to the limitations caused by her mental impairments.  (DN 11).

**Background Information.**

Misty Thompson was born May 28, 1980, making her 28-years-old at the time she applied for SSI (DN 118, 199).  She stands 5'9" tall and weighs 256 lbs(Tr. 133).  Thompson has a high school diploma and attended college for one year (Tr. 40-41).  Her most recent employment includes work at a bank, opening and processing the mail along with several short-term jobs as a restaurant employee (Tr. 50-52). She was terminated from employment at the bank after she accidentally dropped a bundle of checks into the garbage following a dispute with her manager (Tr. 51).

Thompson has one child, Isaiah, a 10-year-old autistic son, whom she cares for (Tr. 55, 118-119).  He receives SSI due to his autism (Tr. 119).  Thompson drives him to school, prepares his meals, bathes him, does laundry for them both, grocery shops weekly, and drives him to the doctor (Tr. 55-57).  She also cares for her two nephews during the week.  Otherwise, she does not go out in public regularly, as she becomes anxious in large crowds of people due to

her mental problems. Thompson, however, has never been hospitalized for her mental health issues (Tr. 40).

Thompson first began to experience panic attacks when she was 16-years-old (Tr. 42-43). Her mother pressured her to seek mental health treatment after observing Thompson's mood swings and anxiety (Tr. 43). Thompson estimated that she experienced such panic attacks 10-12 times a month during the year prior to the administrative hearing before ALJ Traver (Tr. 43). Thompson received monthly treatment for her mental health issues from Dr. Sunil Chhibber, a psychiatrist, at Our Lady of Peace, from May 2007 through February of 2010 (Tr. 40, 199-204, 307-328). She also briefly received mental health treatment at Seven Counties Services from February of 2010 through mid-April of that year (Tr. 330-351). Dr. Ann Rice of Family Practice Associates provides Thompson treatment for her other physical health needs (Tr. 252-284, 407-436).

Although the treatment notes of Dr. Chhibber repeatedly reflect that Thompson was doing fairly well and making progress on medication without side effects (Tr. 307, 309, 310, 314, 316, 318-19, 321, 325, 327), the doctor nonetheless prepared a medical statement on August 26, 2009 that Thompson is unable to perform work due to her bipolar I disorder, panic disorder and agoraphobia (Tr. 251). Dr. Chhibber also completed a psychiatric/psychological impairment questionnaire on November 29, 2009 in which he uniformly found Thompson to be markedly limited in some 20 categories of mental activity related to understanding and memory, sustained concentration and persistence, social interaction and adaptation (Tr. 285, 292).

**Standard of Review.**

4

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, requires a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

5

**Disability Review Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See, 20 CFR §§ 404.1505, 416.905(a).  To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a).  At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled.  See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971.  *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities.  See 20 CFR §§ 404.1520(a)(4)(ii),  416.920(a)(4)(ii).  If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations.  20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined

6

to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work.  20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989).  A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3)  The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who can not return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999).  Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Listing 12.04 Affective Disorders.**

Thompson initially argues in her fact and law summary that she is entitled to be

disabled at step 3 of the sequential evaluation process.  At this step, a claimant will be considered to be disabled if her impairment meets or equals one of the listings of impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *McClellan v. Astrue*, 804 F. Supp.2 d 678 (E.D. Tenn. 2011).  The burden falls on the claimant to prove every element of the applicable listing.  *King v. Sec'y of H&HS*, 742 F.2d 968, 974 (6th Cir. 1986).   When the claimant presents evidence of an impairment that meets or equals all of the requirements for a particular listed impairment, along with the 12-month duration requirement, a finding of disability is required without regard to the claimant's age, education or work history.  *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also, Sullivan v. Zebley*, 493 U.S. 521, 531-33 (1990) ("The Secretary [now Commissioner] explicitly has set the medical criteria defining the listing impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'") (citing 20 C.F.R. §416.925(a)(1989)); *Bowen v. City of New York*, 476 U.S. 467, 471 (1986) ("If a claimant's condition meets or equals the listed impairments, he is conclusively presumed to be disabled and entitled to benefits; if not, the process moves to the fourth step").

An impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings demonstrated by the medical evidence are equivalent in severity and duration to that of a listed impairment.  *See Land v. Sec'y of H&HS,* 814 F.2d 241, 245 (6th Cir. 1986) (citing 20 C.F.R. §1526(b)).  A decision of medical equivalency, however, must be based solely on medical evidence supported

by acceptable clinical and diagnostic techniques.  *Id.*  Finally, an ALJ is not required by Sixth Circuit case law to individually discuss each element of the record when considering the listings so long as the ALJ demonstrates that he has considered the totality of the record.  *Rosic v. Comm'r of Soc. Security*, 2010 WL 3292964 at *3 (N.D. Ohio Aug. 19, 2010) (citing *Gooch v. Sec'y of H&HS*, 833 F.2d 589, 591 (6th Cir. 1987)).

Here, Thompson insists that the evidence of record conclusively shows that her non-exertional mental impairments satisfy all of the criteria of listing 12.04A and B.  (Tr. 10, p. 1).  In particular, Thompson maintains that the medical opinion of her treating psychiatrist, Dr. Chhibber, is sufficient, along with his treatment records of her, to meet the criterial of listing 12.4.

Listing 12.4 is the listing for affective disorders.  It provides as follows:

12.40 *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
   The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
   A.   Medically documented persistence, either continuous or intermittent, of one of the following:
   1.   Depressive syndrome characterized by at least four of the following:
   a.   Anhedonia or pervasive loss of interest in almost all activities; or
   b.   Appetite disturbance with change in weight; or
   c.   Sleep disturbance; or
   d.   Psychomotor agitation or retardation; or
   e.   Decreased energy; or
   f.   Feelings of guilt or worthlessness; or
   g.   Difficulty concentrating or thinking; or
   h.   Thoughts of suicide; or
   i.   Hallucinations, delusions, or paranoid thinking; or
   2.   Manic syndrome characterized by at least three of the

9

following:
   a.  Hyperactivitiy; or
   b.  Pressure of speech; or
   c.  Flight of ideas; or
   d.  Inflated self-esteem; or
   e.  Decreased need for sleep; or
   f.  Easy distractability; or
   g.  Involvement in activities that have a high probability of
painful consequences which are not recognized; or
   h.  Hallucinations, delusions or paranoid thinking; or


   3.  Bipolar syndrome with a history of episodic periods
manifested by the full symptomatic picture of both manic and
depressive syndromes (and currently characterized by either or
both syndromes);

AND

   B.  Resulting in at least two of the following:
   1.  Marked restriction of activities of daily living; or
   2.  Marked difficulties in maintaining social functioning; or
   3.  Marked difficulties in maintaining concentration, persistence,
or pace; or
   4.  Repeated episodes of decompensation, each of extended
duration;

20 C.F.R. Part 404, Subpart P. Appendix 1, listing 12.04.

        The crux of the parties' dispute centers on the B criteria of listing 12.04.

Thompson correctly asserts that Dr. Chhibber has found her to be "markedly" restricted in

virtually all of the B criteria such as daily living, maintaining social functioning, concentration,

persistence or pace, and episodes of decompensation in work or work-like settings (Tr. 287-290).

Consequently, Dr. Chhibber prepared a medical statement in which he expressed his opinion that

due to Thompson's bipolar I disorder, panic disorder and agoraphobia, she is precluded from all

work "due to depression, anxiety and panic attacks."  (Tr. 251).  Thompson argues that ALJ

10

Traver in his hearing decision at fact finding no. 3 completely ignores the medical statement and psychiatric impairment questionnaire prepared by Dr. Chhibber contrary to the requirements of the treating physician rule.

Under the treating physician rule, the Commissioner's regulations require that the ALJ will give a treating source's opinion controlling weight if it"is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." (20 C.F.R. §§404.1527(d)(2), 416.927(d)(2)). *See Cole v. Astrue*, 661 F.3d 931, 937-39 (6th Cir. 2011) (discussing the treating physician rule). A physician will qualify as a treating source if the claimant sees the doctor "with a frequency consistent with accepted medical practice for the type of treatment/evaluation required for the medical condition." *Smith v. Comm'r of Soc. Security*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502).

The treating physician rule rests on the assumption that a medical professional who has dealt with a claimant over a long period of time for a specific illness will have a deeper insight into the medical condition of the claimant than an individual who may have examined the claimant only once or has merely seen the medical records of the claimant. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (citing *Bowman v. Heckler*, 70 F.2d 564, 568 (5th Cir. 1983)). The opinion of a treating source need not be given complete deference, however, if that opinion lacks objective support in the record, is in tension with a prior opinion of the same treating source, lacks meaningful detail, is entirely conclusory, or is in conflict with other evidence of record showing substantial improvement in the claimant's condition. *See White v. Comm'r*, 572 F.3d 272, 285-87 (6th Cir. 2009); *Calvert v. Firstar Financial, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005);

*Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y*, 25 F.3d 284 (6th Cir. 1994).

Even in those circumstances in which the Commissioner does not give the opinion of a treating physician controlling weight, it may still be given great weight. *White*, 572 F.3d at 286 (citing SSR 96-2p). When an ALJ declines to give controlling weight to the opinion of a treating source, the ALJ must balance a number of factors to evaluate what weight the opinion should be given. *Wilson*, 378 F.3d at 544. These factors include the length of the treatment relationship, frequency of examination, the nature and extent of the treatment provided, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Cole*, 661 F.3d at 937 (citing 20 C.F.R. §404.1527(d)(2)).

As to the importance of these factors when determining the weight to be given the opinion of a treating source, *Cole* explains:

> [T]he Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion 20 C.F.R. §404.1527(d)(2). Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. S.S.R. 96-2p (1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended 'to let claimant's understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed his disabled and therefore might be especially bewildered when told by an administrative bureaucracy that ... he is not." *Wilson*, 378 F.3d at 544.

*Cole*, 661 F.3d at 937-38.

When an ALJ fails to conduct a balancing of the above factors to determine the

12

weight that should be awarded to a treating source opinion, such as occurred in *Cole*, the Sixth

Circuit has made clear that it does not "hesitate to remand when the Commissioner has not

provided 'good reasons' for the weight given to a treating physician's opinion and we will

continue remanding when we encounter opinions from ALJs that do not comprehensively set

forth the reasons for the weight assigned to a treating physician's opinion." *Cole*, 661 F.3d at

939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at

545)).

        Here, ALJ Traver did not discuss in fact finding 3 of his decision the psychiatric

assessment questionnaire completed by Dr. Chhibber in November 2009.  Instead, the ALJ

concluded that review of the B criteria of listing 12.04, viewed in light of the background history

received from Seven Counties Services, supports the conclusion that Thompson did not have the

degree of functional limitation required to meet the listing.  ALJ Traver then continued in his

decision to observe that the record established that Thompson likes to help people, gets along

well with her family and neighbors, enjoys fishing and hunting with her father, is the care giver

for her 10-year-old autistic son, prepares the family's meals, shops for groceries, takes her son to

school, and cares for her two nephews during the work week and on some weekends (Tr. 22).

        In light of these activities, ALJ Traver concluded that Thompson had at most

only mild limitations in her activities of daily living with moderate limitations in her social

functioning based on her panic attacks, along with moderate limitations in concentration,

persistence and pace, give her ongoing treatment for emotional problems.  He found that she had

no episodes of decompensation in the workplace, no history of psychiatric hospitalization, and

no likelihood of such decompensation or an inability to function outside a highly supportive

13

living arrangement as required by the C criteria of listing 12.04.  Based on all of these considerations, ALJ Traver concluded that Thompson does not have at least two marked limitations as required by the B criteria of the listing.

If the above analysis of the ALJ were the sole consideration given to Dr. Chhibber's medical source opinion (Tr. 251) and his psychiatric evaluation (Tr. 285-292), the Magistrate Judge would be compelled to recommend a remand of the decision under *Cole* so that the treating physician rule could be properly applied in accordance with 20 C.F.R. §416.927. Examination of the entire hearing decision, however, reveals that ALJ Traver did give appropriate consideration to Dr. Chhibber's opinion and psychiatric review in accordance with the treating physician rule, albeit in the sections of his opinion under fact finding 2 and fact finding 4 (Tr. 21, 24).

ALJ Traver noted at page 4of his opinion (Tr. 21) that Dr. Chhibber's psychiatric questionnaire is directly contradicted by the doctor's own treatment notes during the time that he was Thompson's treating psychiatrist from early 2007 through December of 2009.  Examination of the treatment notes confirms that Dr. Chhibber repeatedly stated that Thompson was "doing well," "making progress," and tolerated her medications of Seroquel, Neurtonin, Xanax and Lexipro without significant side effects. (Tr. 307, 309, 310, 314, 316, 318-19, 321, 325, 327). Accordingly, the doctor's own treatment history of Thompson is diametrically opposed to the marked limitations that he imposed in blanket fashion his psychiatric assessment (Tr. 285-292).

ALJ Traver also discussed at page 7 in his hearing decision the Global Assessment of Functioning (GAF) score of 40 reflected in Dr. Chhibber's treatment notes.  Such a score, as the ALJ notes, would indicate major difficulty in functioning under the DSM-IV

14

guidelines (Tr. 24, 199-204, 307-328).  This score, however, is called into substantial question by the GAF score obtained by Thompson during her subsequent evaluation at Seven Counties Services.  (Tr. 24).  As of Feb. 11, 2010, her current GAF score was 62 (Tr. 340).  This score, which represents a subjective evaluation of an individual's overall level of functioning by a clinician, *DeBoard v. Comm'r*, 211 Fed.Appx. 411, 415 (6th Cir. 2006) indicates only mild difficulty in functioning (Tr. 24).  *See gen., Howard v. Comm'r*, 276 F.3d 235, 241 (6th Cir. 2002) (a GAF score may be of considerable help when determining the residual functional capacity of an individual, but it is not essential).  This significantly higher GAF score is also a factor that ALJ Traver weighed in his opinion so that while it was not mentioned in fact finding no. 3, it was fully considered subsequently in the opinion.

Then, there is also ALJ Traver's consideration of the testimony of Thompson concerning her range of daily activities, which has been detailed above (Tr. 22).  These activities, as the ALJ notes, indicate at most mild to moderate limitations in the B criteria of listing 12.04.  An individual who remains capable of caring for her child, as well as her nephews on a regular basis, grocery shopping, driving her son to school and doctor appointments, fishing and hunting with her father, and who "generally gets along well with others including family and neighbors," simply has not proven herself to be markedly limited in two of the B criteria of listing 12.04.

It is true that ALJ Traver did not discuss Dr. Chhibber's psychiatric review or his medical opinion in fact finding no. 3 of his hearing decision.  Nonetheless, ALJ Traver did obviously give these items due consideration and cited to those portions of the record that supported his obvious conclusion that Chhibber's opinion and evaluation were to be accorded

15

minimal weight under the circumstances of the case.  Accordingly, any error by the ALJ in this

regard should be considered harmless as it is a *de minimis* procedural violation at most given (1)

the patent defects in the treating source's opinion, and (2) that the Commissioner met the goal of

stating reasons for the rejection of the opinion, albeit in other sections of his hearing decision.

*See Pethers v. Comm'r of Soc. Security*, 580 F. Supp.2d 572, 578 n. 15 (W.D. Mich. 2008)

(While the failure of the Commissioner to comply with 20 C.F.R. §§404.1527(b)(2) and

416.927(d)(2) is generally not subject to harmless-error analysis, a narrow category of cases

exists where the violation is a *de minimis* procedural violation such as where the treating

source's opinion is so patently deficient that the Commissioner could not possibly credit it, or

where the Commissioner has met the underlying goal - - the procedural safeguard of setting forth

reasons for rejecting such opinion) (citing *Bradford v. Comm'r*, 2008 WL 398281 at *3 n. 2

(quoting *Fisk v. Astrue*, 253 Fed. Appx. 580 (6th Cir. 2007)).[1]

---

[1]  The Magistrate Judge notes that both the medical statement (Tr. 251) and psychiatric
impairment questionnaire (Tr. 285-92) prepared by Dr. Chhibber would appear to fall into this
narrow category.  Dr. Chhibber's brief medical statement advises essentially that Thompson has
been treated by Dr. Chhibber for bipolar I disorder and panic disorder with agoraphobia (Tr.
251).  It then continues to state merely "NO SEDENTARY work due to depression, anxiety and
panic attacks."  (*Id*.).  This statement is not subject to the provisions of the treating physician
rule as the opinion represents a legal conclusion that falls within the purview of the
Commissioner.  *See, gen., Stanley v. Sec'y*, 39 F.3d 115, 118 (6th Cir. 1984) (Secretary may
properly reject treating physician's unexplained opinion that a claimant is disabled); *Casey v.
Sullivan*, 987 F.2d 1230, 1234-35 (6th Cir. 1993) (treating physician's opinion that a claimant is
unemployable is not the equivalent to a determination of disability); *King v. Heckler*, 742 F.2d
968, 973 (6th Cir. 1984) (because the definition of disability requires both medical and vocational
factors be considered, the Commissioner is not bound by the statement of a treating physician
that a claimant is "disabled.").

Further, with respect to Dr. Chhibber's psychiatric evaluation, the Magistrate
Judge notes that Dr. Chhibber found Thompson to be "markedly limited" in every single
category of assessment, some 20 categories in total (Tr. 287-290).  This means that under the
definition of "markedly limited" (Tr 287), Thompson would be precluded from performing
virtually all mental activity "in a meaningful manner."  (*Id*.).  Yet, the doctor's own treatment

16

Because substantial evidence supports the finding of the ALJ that the claimant does not meet or equal the criteria of Listing 12.04, and because the ALJ did not fail to consider Dr. Chhibber's medical statement and psychiatric assessment questionaire, the decision of the Commissioner is not subject to reversal on this ground.

**Finding of Fact No. 4**

Thompson in point 3 of her fact and law summary maintains that ALJ Traver failed to properly evaluate her credibility under 20 C.F.R. §416.929 (DN 10, p. 2).  Specifically, she maintains that ALJ Traver erred when he compared her statements against his own residual functional capacity (RFC) determination, rather than against the evidence of record.  Thompson also argues that the hearing decision incorrectly relies on the absence of psychiatric hospitalization as a factor in assessing her credibility, where mental impairment such as her bipolar I disorder and panic disorder are not ordinarily treated except by medication and therapy (*Id*.).

In his hearing decision, ALJ Traver at page 6 concluded that Thompson had established the existence of a medically determinable underlying mental impairments, bipolar disorder and panic attacks, that could reasonably be expected to cause her alleged symptoms (Tr. 23). The ALJ continued, however, to conclude immediately thereafter that Thompson's

---

notes, and Thompson's hearing testimony, run directly contrary to this extraordinary limitation imposed by the doctor.   This contradiction in the Magistrate Judge's view renders the evaluation "patently deficient" within *Pethers*, 580 F. Supp.2d at 578 n. 15.  The patent deficiently combined with the discussion of Dr. Chhibber's evaluation in other portions of the hearing decision firmly places the present case within the "narrow category of cases" in which a *de minimis* procedural violation may constitute harmless error.  *Id*.

statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with his RFC determination (*Id*.).  As support for his credibility determination, ALJ Traver noted the absence of psychiatric hospitalization, the repeated comments by Dr. Chhibber in his treatment notes that Thompson was doing well, making progress, and her medication had no side effects (Tr. 24).  He further noted that the records made available from Seven Counties Services contained only two treatment notes due to Thompson's repeated failure to appear for treatment on five occasions over a relatively short period of time (Tr. 24).  Finally, ALJ Traver also noted the GAF score of 62 upon intake at Seven Counties "indicating only mild difficulty functioning under DSM-IV guidelines."  (DN 24).

An administrative law judge properly may consider the credibility of a claimant when evaluating the claimant's subjective complaints, and the federal courts will accord "great deference to that credibility determination."  *Warner v. Comm'r*, 375 F.3d 387, 392 (6th Cir. 2004).  The standard in the Sixth Circuit for evaluating subjective complaints, such as complaints of pain for example, was established in *Duncan v. Sec'y of H&HS*, 801 F.2d 847, 853 (6th Cir. 1986).  *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (setting forth the *Duncan* standard).

Under *Duncan*, the Court first determines whether objective medical evidence of an underlying medical condition is present in the record.  *Id.*  If so, then the Court will examine whether such evidence confirms the severity of the claimant's subjective symptoms related to the condition, or whether the objectively established medical condition itself is of sufficient severity that it can be reasonably expected to produce the alleged subjective symptoms, such as disabling

18

pain.  *Id.*  The findings of the ALJ in this regard are repeatedly held in the Sixth Circuit to be

accorded great weight and deference given the ability of the ALJ to observe the demeanor and

credibility of the witnesses.  *Walters v. Comm'r*, 127 F.2d 525, 531 (6th Cir. 1997) (citing

*Villarreal v. Sec'y*, 818 F.2d 461, 463 (6th Cir. 1987)).  Yet, the ALJ is not accorded absolute

deference and his or her assessment of a claimant's credibility must be supported by substantial

evidence.  *Beavers v. Sec'y*, 577 F.2d 383, 386-87 (6th Cir. 1978).

      When the ALJ "finds contradictions among the medical reports, claimant's

testimony and other evidence," the ALJ may properly discount the credibility of the claimant.

*Winning v. Comm'r*, 661 F. Supp.2d 807, 822 (N.D. Ohio 2009) (citing *Walters*, 127 F.3d 525,

531 (6th Cir. 1997)).  The ALJ, however, is not permitted to render a credibility determination

based solely upon a hunch, or "intangible or intuitive notion about an individual's credibility."

*Id.* (citing *Rogers*, 486 F.3d at 247) (citing SSR 96-7p)).  Under SSR 96-7p, the ALJ must in the

hearing decision set forth specific reasons for the credibility determination sufficient to make

clear to the claimant and subsequent reviewers the weight that the ALJ gave to the claimant's

statements and the reasons for such weight.  *Winning*, 661 F. Supp.2d at 823.  A mere blanket

assertion that a claimant is not believable will not be sufficient under SSR 96-7p.  *Id.* (citing

*Rogers*, 486 F.3d at 248).

      An assessment of the claimant's credibility must be based on a consideration of

all the evidence of record.  It should include consideration of not only the objective medical

evidence but the following factors as well: (1) the daily activities of the claimant; (2) the

location, duration, frequency, and intensity of the claimant's symptoms including pain; (3) any

factors that precipitate or aggravate the symptoms; (4) the dosage, type, effectiveness and side

effects of any medication taken to alleviate such symptoms or pain; (5) treatment that the claimant has received for relief of his or her symptoms; (6) any measures other than treatment that the claimant uses to relieve his or her symptoms; and (7) any other factors relating to the functional limitations and restrictions of the claimant due to such symptoms or pain. *Id*. at 823 n. 14 (citing SSR 96-7p). Also included among the evidence that the ALJ must consider are the medical signs and laboratory findings of record, the diagnosis, prognosis and medical opinions provided by any treating physicians or other medical sources, and any statements or reports from the claimant, physicians or other persons about the claimant's medical history, treatment, response to treatment, prior work record, daily activities and other information related to the symptoms of the claimant and how such symptoms affect his or her ability to work. *Id*.

When the record establishes consistency between the subjective complaints of the claimant and the other evidence of record, such consistency will tend to support the credibility of claimant, while in contrast, any inconsistency in this regard will tend to have the opposite effect. *Winning*, 661 F. Supp.2d at 823. The reviewing court does not make its own credibility determinations. *Franson v. Comm'r*, 556 F. Supp.2d 716, 726-27 (W.D. Mich. 2008) (citing *Walters*, 127 F.3d at 528)). The federal courts will not substitute their own credibility determination for that of the ALJ as the fundamental task of the Commissioner is to "resolve conflicts in the evidence and to decide questions of credibility." *Rineholt v. Astrue*, 617 F. Supp.2d 733, 742 (E.D. Tenn. 2009) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)). Given the substantial deference accorded the credibility determination of the Commissioner, "'claimants challenging the ALJ's credibility determination face an uphill battle.'" *Franson*, 556 F. Supp.2d at 726-27 (citing *Daniels v. Comm'r*, 152 Fed. Appx. 485,

488 (6ᵗʰ Cir. 2005)).

Thompson has not won the "uphill battle" in this case.  The credibility

determination of ALJ Traver is well supported in the medical records and the claimant's own

testimony.  As earlier noted, the treatment notes of Dr. Chhibber consistently indicate during the

three years that he treated Thompson that she was doing well and making progress without any

significant side effects from her medications. (Tr. 307, 309, 310, 314, 316, 318-19, 321, 325,

327).  Her hearing testimony reflects that Thompson, despite her bipolar disorder and panic

attacks, remained capable of caring for her 10-year-old autistic son, without parental supervision,

as well as her two nephews.  She testified that she drives her son to school and doctor's

appointments, grocery shops once a week, does laundry, fishes and hunts with her father, visits

with family members, and is friendly with her neighbors.  Although Thompson has sought

emergency room treatment on several occasions for her panic attacks (Tr. 247-250), her anxiety

primarily limits her from being around large groups of people.  In short, examination of the

record in its entirety is supportive of ALJ Traver's credibility determination, as well as his RFC

assessment at step 4 of the sequential evaluation process found at pages 5-8 of his hearing

decision (Tr. 22-24).


**Finding of Fact No. 5**

Thompson in her final argument challenges the testimony of vocational expert

Harpool based on an allegedly flawed hypothetical question by the ALJ that failed to encompass

all of the claimant's impairments contrary to *Ealy v. Comm'r*, 594 F.3d 504 (6ᵗʰ Cir. 2010).

ALJ Traver's hypothetical to vocational expert (VE) Harpool is found at pages 30-32 of the

hearing transcript (Tr. 60-62).  After the VE establishes that Thompson's past relevant work as a mail opener at the bank constitutes light, unskilled work (Tr. 60), ALJ Traver then proposed a hypothetical to VE Harpool (Tr. 61).  In the hypothetical, ALJ Traver asked the VE to assume that Thompson was limited to lifting 20 lbs. occasionally, standing and walking 6 of 8 hours, sitting for 6 of 8 hours, with no working at heights or dealing with the general public, but only work in a light, low-stress job with a limited number of co-workers and limited supervision performing simple two-step work.  With this assumption, VE Harpool testified that Thompson could return to her past relevant work as a mail clerk (Tr. 61).

Assuming that she could only stand or walk for two of eight hours due to plantar fasciitis, Harpool again concluded that Thompson still would remain capable with those additional limitations of performing her prior job as a mail clerk (*Id.*).  If, however, Harpool assumed the limitations set forth in Dr. Chhibber's psychiatric evaluation (Tr. 285-292), in which Dr. Chhibber imposed marked limitations in 20 different mental activities (Tr. 287-290), then the VE concluded that there would be no work of any nature in the national economy that she could perform given those marked limitations and a GAF score of 40 (Tr. 62).

The testimony of a vocational expert may be substantial evidence to support a decision of the ALJ if that testimony is made in response to a hypothetical question that accurately portrays the mental and physical impairments of the claimant.  *Ealy*, 594 F.3d at 512-13 (citing *Varley v. Sec'y*, 820 F.2d 777, 779 (6th Cir. 1987)).  The hypothetical question to the VE is not required, however, to include a list of the claimant's medical conditions.  *Wadd v. Comm'r*, 368 F.3d 629, 632-33 (6th Cir. 2004).  Further, the ALJ may present a hypothetical to the VE on the basis of the ALJ's assessment of the claimant's credibility.  *Jones v. Comm'r*, 336

F.3d 469, 475-76 (6th Cir. 2003) (citing *Townsend v. Sec'y*, 762 F.2d 40, 44 (6th Cir. 1985)).

Likewise, the hypothetical question to the VE need not incorporate those limitations asserted by

the claimant that are properly rejected by the ALJ based upon his independent review of the

record. *Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001).

      Here, ALJ Traver did not include the limitations found in Dr. Chhibber's

psychiatric impairment questionnaires (Tr. 285-292),which the ALJ determined are not

supported by the record.  ALJ Traver, as this Court has concluded, correctly declined to include

such blanket limitations in his hypothetical, which otherwise includes the mental limitations

established by the record such as limited access to the general public, work in a low stress

environment, performing simple two-step work with a limited number of co-workers and

supervisors.  (Tr. 61).  Under such limitations, VE Harpool testified that Thompson remains

capable of performing her past relevant work as a mail clerk.  Because the hypothetical relied

upon by ALJ Traver accurately portrayed her limitations, and because Thompson in her fact and

law summary failed to indicate what specific limitations were erroneously omitted, the

Magistrate Judge concludes that the testimony of Harpool constitutes substantial evidence on

which to support the finding that Thompson is not disabled at step 4 of the sequential evaluation

process due to her remaining ability to return to her past relevant work.


## RECOMMENDATION

      The Magistrate Judge having made findings of fact and conclusions of law

recommends that the decision of the Commissioner be **AFFIRMED**.

## **<u>NOTICE</u>**

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd.*, 474 U.S. 140 (1985). 28 U.S.C. § 636(b)(1)(c); Fed.R.Civ.P. 72(b).

Copies to Counsel of Record